UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DORITA AJA, ) | Civil Action No. |
| ) | 16-10007-FDS |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| OCWEN LOAN SERVICING, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS TO STRIKE AND CROSS-MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a dispute concerning a mortgage. Plaintiff Dorita Aja has been in default on a mortgage—on a property that is not her principal residence—for approximately eight years. Defendant Ocwen Loan Servicing, LLC is the current servicer of the note. Aja has brought suit against Ocwen under state law to void the mortgage, recover damages, and enjoin any potential foreclosure. Both parties have moved for summary judgment, and Ocwen has also moved to strike certain paragraphs of Aja's affidavits in support of her motion for summary judgment. For the following reasons, the motions to strike will be denied as moot, plaintiff's motion for summary judgment will be denied, and defendant's motion for summary judgment will be granted.

**I.      Background**

The following facts are as set forth in the record.

**A.      Factual Background**

Plaintiff Dorita Aja owns property located at 22.5 Sigourney Street, Unit F in Jamaica

Plain, Massachusetts (the "property"). (Compl. ¶ 4). She does not reside in the property. (Pl.'s SMF ¶ 7). On December 20, 2004, she mortgaged the property for the original principal amount of $362,500. (Docket No. 86, Ex. G). The annual interest rate of the note was 6.85%, resulting in required monthly payments of $2,375.31. (*Id.*).

The initial owner of the note was Shamrock Financial, a Rhode Island corporation. (*Id.*). Shamrock Financial assigned the mortgage to Option One Mortgage Co. (Docket No. 86, Ex. I). The mortgage was recorded with the Suffolk County Registry of Deeds on December 27, 2004. (Def.'s SMF ¶ 3). On March 3, 2008, Option One assigned the mortgage to Wells Fargo as trustee for "MASTR Asset Backed Securities Trust 2005-OPT1"; the assignment was recorded with the Registry of Deeds on March 7, 2008. (Docket No. 86, Ex. J). The 2008 assignment was signed by Topako Love, who purported to be the Assistant Secretary of Option One. (*Id.*). A minor correction to the name of the mortgagee was made on October 24, 2012. (Docket No. 86, Ex. K; Def.'s SMF ¶ 6).

Aja has been in default on her payment obligations since at least early 2010. (Pl.'s Affidavit in Support ¶ 6).[1]

In 2008, the Massachusetts Attorney General brought proceedings against Option One (later renamed Sand Canyon) and its loan servicer American Home Mortgage Servicing, Inc. ("AHMSI"), for predatory and discriminatory lending practices. (Docket No. 93, Ex. L). On August 8, 2011, Option One entered into a consent judgment where it agreed to various forms of monetary and injunctive relief. (*Id.*; Def.'s SMF ¶ 9). Option One promised to modify certain loans after the consent judgment's effective date of November 6, 2011. (Docket No. 93, Ex. L;

---

[1] Ocwen contends that Aja has not made any payments since 2009. However, the exact date at which Aja went into default is immaterial for the purpose of addressing the instant motions.

Def.'s SMF ¶ 10). As relevant here, loans originated by Option One and serviced by AHMSI were eligible for modification provided that they were secured by property that (1) was located in Massachusetts, (2) *occupied by the owner*, and (3) the *owner's primary residence*. (Def.'s SMF ¶ 11).[2]

There is no record of any representative of Option One, AHMSI, or Ocwen contacting Aja concerning the 2011 consent judgment. However, in a letter dated August 25, 2011, AHMSI notified Aja that it was "currently gathering information to determine if [she was] eligible for the Home Affordable Modification Program (HAMP)." (Docket No. 90, Ex. 1 at 91). Aja apparently provided some information to AHMSI, because on March 21, 2012, AHMSI sent another letter to Aja informing her that the information package she sent was incomplete and that she would need to send additional information concerning her finances. (*Id.* at 87). Aja apparently sent the requested information. However, on April 11, 2012, AHMSI notified Aja that she was ineligible for a HAMP modification because the property was not her principal residence. (*Id.* at 98).

Ocwen replaced AHMSI as the loan servicer on February 19, 2013. (Def.'s SMF ¶ 17). On March 3, 2015, Ocwen mailed Aja a letter providing a "Shared Appreciation Modification" offer. (Docket No. 90, Ex. 1 at 107). The enclosed "Frequently Asked Questions" section stated that she was eligible for the modification because (1) her property was "underwater," as she owed more than the property was worth, and (2) she did not qualify for HAMP. (*Id.* at 109). To qualify, Aja would have to make an initial monthly payment of $2,052.90 by April 1, 2015. (*Id.* at 107). Under the terms of the Shared Appreciation Modification offer, Ocwen would

---

[2] The criteria were "generally consistent with HAMP" (Home Affordable Modification Program) requirements. (Docket No. 86, Ex. L at 7). A summary of the criteria can also be found on the website of the Massachusetts Attorney General. Option One Settlement FAQs, available at http://www.mass.gov/ago/consumer-resources/consumer-information/home-and-housing/foreclosures-and-mortgage-lending/option-one-faqs.html.

categorize $32,191.08 of Aja's outstanding balance as "deferred principal" as to which Aja would not owe any interest. (*Id.* at 111). The deferred principal balance would also be eligible for debt forgiveness over the next three years. (*Id.*). The interest rate on the remaining balance of $501,992.26 would further be reduced to 2.21528% per year. (*Id.*). In exchange, Aja would have to remit 25% of any future appreciation in the property's value to Ocwen, capped at the amount of principal forgiveness of $32,191.08. (*Id.* at 112). There would also be a "balloon payment" due in 2035. (*Id.* at 116).

Aja never made the April 1, 2015 payment, and thus never accepted the Shared Appreciation Modification offer.

On July 20, 2015, Aja's then-attorney David Zak mailed a demand letter to Ocwen pursuant to Mass. Gen. Laws ch. 93A.[3] The demand letter requested that Ocwen grant a principal balance reduction of $184,183, which the letter characterized as lost equity. (Compl. Ex. A at 3). The letter alleged multiple violations of Chapter 93A by Ocwen, Option One, and AHMSI. (*Id.* at 1-4). Ocwen's counsel replied on October 13, 2015, denying any violation of Chapter 93A. (Docket No. 90, Ex. 2 at 19). Nevertheless, the reply included a settlement offer. By that date, the outstanding balance on Aja's account had increased to $549,774.67. (*Id.* at 22).[4] Ocwen's settlement offer would reduce the balance to $536,000 and lower the interest rate to 3.9%; there would also be a balloon payment of $378,306.60 due in 2035. (*Id.*).

Aja did not accept the settlement offer, instead electing to file suit.

---

[3] The Suffolk County Superior Court later found attorney Zak liable under the state Consumer Protection Act for preying on property owners facing foreclosure. The Court found that Zak targeted Spanish and Portuguese-speaking persons and made deceptive guarantees that borrowers' mortgage loans could be modified. *See* Commonwealth of Massachusetts vs. David Zak, Final Judgment and Permanent Injunction, available at http://www.mass.gov/ago/docs/press/2015/zak-final-judgment.pdf.

[4] That amount reflects $374,868.26 in principal balance, $130,602.93 in accrued interest, $40,747.25 in an unpaid escrow advance reflecting Ocwen's payments of taxes and insurance on the property, and $3,556.22 in other advances. (Docket No. 90, Ex. 2 at 22).

4

### B. Procedural Background

Aja filed suit on December 3, 2015, in the Suffolk County Superior Court. Her complaint asserts five counts: violation of Mass. Gen. Laws ch. 266, § 35A (Count 1); violation of Mass. Gen. Laws ch. 267, § 1 (Count 2); an action to quiet title under Mass. Gen. Laws ch. 240, § 1 (Count 3); violation of Chapter 93A with respect to the HAMP modification process (Count 4); and violation of Chapter 93A with respect to the Shared Appreciation Modification and Chapter 93A offers (Count 5). Ocwen removed the action to this Court on January 5, 2016. Both parties have moved for summary judgment, and Ocwen has also moved to strike portions of two of Aja's affidavits in support of her motion.

## II. Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted). The

nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256–57.

## III.     Motions to Strike

Defendant has moved to strike certain paragraphs to plaintiff's affidavits in support of her motion for summary judgment. Because the Court will not rely on the disputed paragraphs in deciding the cross-motions for summary judgment, the motions to strike will be denied as moot.[5]

## IV.     Cross-Motions for Summary Judgment

### A.     Allegations of Fraud

#### 1.     Violation of Mass. Gen. Laws ch. 266, § 35A

Count 1 alleges that defendant violated Mass. Gen. Laws ch. 266, § 35A for recording a fraudulent assignment of plaintiff's mortgage. That statute provides:

> Whoever intentionally: (1) makes or causes to be made any material statement that is false or any statement that contains a material omission, knowing the same to be false or to contain a material omission, during or in connection with the mortgage lending process, with the intent that such statement be relied upon by a mortgage lender, borrower or any other party to the mortgage lending process . . . shall be punished by imprisonment [and/or a fine].

Mass. Gen. Laws ch. 266, § 35A. However, the statute only provides for criminal penalties, and "does not provide an individual borrower with a private cause of action or even refer to a civil suit for a violation of that section." *Aliberti v. GMAC Mortg., LLC*, 779 F. Supp. 2d 242, 247 (D. Mass. 2011). Accordingly, defendant's motion for summary judgment as to Count 1 will be granted.

---

[5] Many of the paragraphs subject to defendant's motion to strike include inadmissible opinion, speculation, and hearsay. Although some paragraphs include statements which would be admissible at trial, both parties have provided extensive primary documentary evidence on which the Court will rely in lieu of affidavits that are unsupported or contradicted by the record.

### 2. **Violation of Mass. Gen. Laws ch. 267, § 1**

Count 2 alleges that defendant violated Mass. Gen. Laws ch. 267, § 1 by recording a fraudulent assignment of plaintiff's mortgage. That statute provides:

> Whoever, with intent to injure or defraud, falsely makes, alters, forges or counterfeits a public record . . . in relation to a matter wherein such certificate, return or attestation may be received as legal proof . . . shall be punished by imprisonment in the state prison for not more than ten years or in jail for not more than two years.

Mass. Gen. Laws ch. 267, § 1. That statute also provides only for criminal penalties. "[P]rivate citizens do not have standing to prosecute criminal violations or to initiate criminal proceedings in their own names." *Cichocki v. Bank of America*, 2016 WL 3962814, at *3 (D. Mass. July 21, 2016). Therefore, defendant's motion for summary judgment as to Count 2 will be granted.

### 3   **Challenges to the Validity of the 2008 Assignment**

Embedded in Counts 1 and 2 is a challenge to the validity of the 2008 assignment transferring the mortgage from Option One to "Wells Fargo Bank, N.A., as Trustee for MASTR Asset Backed Securities Trust 2005-OPT1." (Docket No. 86, Ex. J). The complaint alleges that the signatory, Topako Love, was a so-called robo-signer employed by Loan Processing Services ("LPS"). (Compl. ¶¶ 13, 16). The complaint further alleges Love was also signing as "assistant secretary" to companies other than Option One, including Mortgage Electronic Registration Systems ("MERS") and Indy Mac Mortgage. (*Id.* ¶ 18). Neither party has provided documentation concerning the exact role Love played in Option One, MERS, and Indy Mac. Furthermore, a "bare allegation of 'robo-signing' does nothing to undermine the validity of [an assignment]." *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 14 (1st Cir. 2014).

In any event, even assuming that Love was a robo-signer, plaintiff lacks standing to challenge the 2008 assignment. In *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282

(1st Cir. 2013), the First Circuit stated that third parties such as mortgagors could have standing to challenge the validity of an assignment. However, standing is greatly circumscribed, as a mortgagor may only "challenge a mortgage as invalid, ineffective or void." *Id.* at 291. A "void mortgage assignment is one in which the putative assignor 'never properly held the mortgage and, thus, had no interest to assign.'" *Wilson*, 744 F.3d at 10 (quoting *Culhane*, 708 F.3d at 291). By contrast, under Massachusetts law, a mortgagor "does not have standing to challenge shortcomings in an assignment that render[s] it *merely voidable* at the election of one party but otherwise effective to pass title." *Culhane*, 708 F.3d at 291 (emphasis added).

Although the complaint alleges that the 2008 assignment was void, plaintiff never disputed the fact that Option One properly held the mortgage between 2004 and 2008. The notarized 2008 assignment clearly identified Topako Love as an authorized signatory of Option One. (Docket No. 93, Ex. J). Because the record contains no facts to contradict the 2008 assignment's facial compliance with the statutory requirements of Mass. Gen. Laws ch. 183, § 54B, at most the assignment was voidable.[6] *See Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 158 (1st Cir. 2017) ("Under Massachusetts law, as long as the assignor is the record holder of the mortgage at the time of the assignment . . . an assignment that complies with . . . [section 54B] 'cannot be shown to be void.'") (citations omitted). Therefore, plaintiff has no standing to challenge the assignment. *See Wells Fargo Bank, N.A. v. Anderson*, 89 Mass. App. Ct. 369, 372 (2016).

The complaint also alleges that the 2008 assignment is void because it "was recorded three years after the trust settlement date." (Compl. ¶ 42). The complaint suggests that the 2008

---

[6] Mass. Gen. Laws ch. 183, § 54B requires that assignments of mortgages "be (1) executed before a notary public or person with similar authority to acknowledge such instruments; and (2) executed by a person purporting to hold the position of vice president or the like, with the entity holding such mortgage." *In re Lopez*, 486 B.R. 221, 229 (Bankr. D. Mass. 2013) (internal quotation marks omitted).

assignment was invalid because it did not comply with the terms of the trust instrument. Neither party has introduced exhibits detailing the contents of the instrument. Nevertheless, "an assignment made in contravention of [ ] a trust agreement is at most voidable at the option of the parties to the trust agreement, not void as a matter of law." *Dyer v. Wells Fargo Bank, N.A.*, 841 F.3d 550, 554 (1st Cir. 2016) (citing *Butler v. Deutsche Bank Trust Co. Americas*, 748 F.3d 28, 37 (1st Cir. 2014)). Because plaintiff has failed to show that the 2008 assignment was void, she has no standing to challenge its validity.

### 4. **Request for Leave to Amend**

In her opposition, plaintiff has requested that she be permitted to amend her complaint with respect to Counts 1 and 2 to offer "corollary statute[s] which amount[ ] to fraud on the issues with the assignments." (Pl.'s Opp. at 2). A party seeking to amend a complaint after the deadline set forth in a scheduling order must demonstrate "good cause" for the delay. *See O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004). The reason for the heightened standard under Rule 16 as compared with Rule 15 is to "preserve[ ] the integrity and effectiveness of Rule 16(b) scheduling orders." *Id.* at 155. In analyzing the plaintiff's reasons for delay, the Court must "focus[ ] on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). Amendment may also be denied on the ground of futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the original complaint was filed in state court on December 3, 2015. After removal, the Court issued a scheduling order establishing a deadline of May 17, 2016, for motions to amend the pleadings, after which good cause must be shown. Plaintiff's opposition was filed on August 21, 2017, more than a year after the scheduling order deadline. She has not

9

offered a rationale to justify the delay, other than to argue that defendant chose to answer the complaint instead of filing a "timely motion to dismiss" that would have alerted her to the complaint's defects. (Pl.'s Opp. at 2). There has been no material change in the facts, and there is no apparent reason why the statutes in question could not have been cited in the original complaint. Therefore, plaintiff has failed to establish the "good cause" required to file an untimely motion to amend.

Finally, and in any event, the proposed amendment appears to be futile. Plaintiff has not provided a copy of a proposed amended complaint and has given no explanation as to how the "corollary statute[s]" in question would provide her with a cause of action against Ocwen. Her request to amend her complaint will accordingly be denied.

### C. Action to Try Title and Quiet Title

Count 3 seeks to "quiet title" to the property under Mass. Gen. Laws ch. 240, § 1. However, that statute provides a cause of action to "try title" rather than "quiet title." In try title actions, a plaintiff may "defeat [ ] specified adverse claims through a default or by showing title that is merely superior to that of the respondent." *Bevilacqua v. Rodriguez*, 460 Mass. 762, 767 n.5 (2011). Invocation of the try title statute necessitates a two-step analysis. *Abate v. Fremont Inv. & Loan*, 470 Mass. 821, 822 (2015). First, the plaintiff must establish the "jurisdictional elements": "(1) that [s]he holds 'record title' to the property; (2) that [s]he is a person 'in possession'; and (3) the existence of an actual or possible 'adverse claim' clouding the plaintiff's record title." *Id.* at 827 (citing *Blanchard v. Lowell*, 177 Mass. 501, 504 (1901)). Second, the adverse claimant must bring an action to assert the claim to title or disclaim its interest in the property. *Abate*, 470 Mass. at 822.

Plaintiff's try title claim fails at the first step. The Supreme Judicial Court has stated that

with respect to the third jurisdictional element, the "'adverse claim' element of a try title action is sufficiently alleged *only if the foreclosure already has occurred*." *Id.* at 834 (emphasis added). Because it is undisputed that foreclosure has not occurred, the try title claim is premature.

In the alternative, plaintiff appears to invoke the quiet title statute, Mass. Gen. Laws ch. 240 § 6. Whereas the try title suit is an action at law, a quiet title suit is an *in rem* action in equity. *Abate*, 470 Mass. at 827 n.14. However, a plaintiff must not only "demonstrate better title to the locus than the defendant[ ]. . . [but also] prove sufficient title to succeed in its action." *Bevilacqua*, 460 Mass. at 767 n.5 (quoting *Sheriff's Meadow Found., Inc. v. Bay-Courte Edgartown, Inc.*, 401 Mass. 267, 269 (1987)).

In Massachusetts, a quiet title action may be pursued where "both actual possession and the legal title are unified in the plaintiff." *Bevilacqua*, 460 Mass. at 767 n.5 (quoting *First Baptist Church of Sharon v. Harper*, 191 Mass. 196, 209 (1906)). However, plaintiff has not established that she owns legal title to the property. "[A] quiet title action is not an avenue open to a mortgagor whose debt is in arrears because, until the mortgage is discharged, the title necessarily remains under a cloud." *Flores v. OneWest Bank, F.S.B.*, 172 F. Supp. 3d 391, 396 (D. Mass. 2016) (appeal filed) (quoting *Oum v. Wells Fargo, N.A.*, 842 F. Supp. 2d 407, 412 (D. Mass. 2012) (abrogated on different grounds)). Plaintiff concedes that she has been in default on her mortgage for several years. (Pl.'s Affidavit in Support ¶ 6). Accordingly, defendant's motion for summary judgment as to Count 3 will be granted.

### D. <u>Chapter 93A Claims</u>

Counts 4 and 5 bring claims against defendant under Mass. Gen. Laws ch. 93A for engaging in "unfair and deceptive conduct to delay and frustrate the HAMP review process" and refusing to grant a principal balance reduction, respectively. (Compl. ¶¶ 58-77). "Conduct is

11

unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'" *Cummings v. HPG Int'l Inc.*, 244 F.3d 16, 25 (1st Cir. 2001) (quoting *PMP Assoc. Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)).

### 1. The HAMP Review Process

The record is devoid of any evidence that Ocwen's conduct in relation to the loan modification process was either unfair or deceptive. Plaintiff contends that AHMSI sent her a letter stating that she was eligible for HAMP and a loan modification pursuant to the Option One consent judgment reached with the Massachusetts Attorney General. (Pl.'s Statement in Support of Opp. at 8). However, the letter plaintiff cites merely stated that AHMSI would investigate whether she was eligible for a HAMP loan modification. (Docket No. 90, Ex. 1 at 91). There is no evidence that defendant or its agents, affiliates, or predecessors-in-interest promised plaintiff that she was entitled to a loan modification pursuant to HAMP or the Option One consent judgment. Nor does the record contain any evidence of defendant delaying or frustrating the HAMP review process.

Moreover, the plain language of HAMP and the Option One consent judgment clearly show that plaintiff was never eligible for a modification under those programs. HAMP's goal was to provide relief to borrowers who had defaulted or were likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt. *See* U.S. Dep't of the Treasury, Supplemental Directive 09–01, available at https://www.hmpadmin.com/ portal/programs/docs/hamp_servicer/sd0901. Under those guidelines, borrowers could be eligible for a loan modification under certain conditions, including the condition that the mortgage be secured by the borrower's primary residence. *Id.* at 2. However, the property in

question was not plaintiff's primary residence. (Pl.'s SMF ¶ 7). Therefore, she was ineligible for a loan modification under both HAMP and the Option One consent judgment.[7]

### 2. The Shared Appreciation Modification and Ch. 93A Settlement Offers

Similarly, there is no evidence that Ocwen's conduct in making the Shared Appreciation Modification offer and the Chapter 93A settlement offer was either unfair or deceptive. The complaint contends that the Shared Appreciation Modification offer would "require [plaintiff] to surrender 25% of the equity in her home" and that defendant "imposed" the modification on her. (Compl. ¶¶ 69, 75). These factual claims are contradicted by the record. The plain language of the Shared Appreciation Modification offer specified that if plaintiff accepted the offer, $32,191.08 of her principal balance would be "deferred." (Docket No. 90, Ex. 1 at 111). That amount would be forgiven in "equal installments over three years." (*Id.*). However, if the value of the property appreciated, defendant would be entitled to 25% of the appreciation value, capped at the amount of the "deferred" principal balance. (*Id.* at 112). In addition, the offer was not "imposed" on plaintiff; she could elect to accept the offer by making a payment on April 1, 2015, or refuse and adhere to the previously existing payment plan (on which she had already defaulted). (*Id.* at 107).

Ocwen's settlement offer in response to plaintiff's demand letter also did not violate Chapter 93A. The complaint contends that plaintiff was entitled to a significant reduction in her principal balance under the consent judgment and that the settlement offer was unfair. However, as noted, plaintiff's loan was never subject to the 2011 Option One consent judgment, and thus she had no right to a modification. Although plaintiff was dissatisfied with the debt relief defendant offered, defendant had no duty to modify the loan any further. "Under Massachusetts

---

[7] As mentioned earlier, one of the criteria for a modification pursuant to the Option One consent judgment was that the original loan be secured by the borrower's primary residence.

case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults." *Mackenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 493 (1st Cir. 2013) (quoting *Peterson v. GMAC Mortg., LLC*, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011)). Therefore, defendant's conduct was neither "unfair" nor "deceptive," and defendant's motion for summary judgment as to Counts 4 and 5 will be granted.[8]

### 3. Alternative Theories of Liability

In her opposition, plaintiff appears to introduce new theories of liability under Chapter 93A. Specifically, plaintiff alleges that defendant violated the Fair Debt Collection Practices Act and Truth in Lending Act, and appears to invoke the Predatory Home Loan Practices Act. (Pl.'s Statement in Support of Opp. at 7-10). However, these arguments were not raised in the complaint or demand letter. "Chapter 93A requires claimants to set out specifically any activities in their demand letter as to which they seek relief. Separate relief on actions not so mentioned is foreclosed as a matter of law." *Clegg v. Butler*, 424 Mass. 413, 423 (1997). In addition, a plaintiff is "not entitled to raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment." *Calvi v. Knox County*, 470 F.3d 422, 431 (1st Cir. 2006) (citing *Torres–Rios v. LPS Lab.*, 152 F.3d 11, 15-16 (1st Cir. 1998)). Therefore, the Court declines to consider the merits of any such newly-raised claims.

## V. Conclusion

For the foregoing reasons, defendant's motions to strike are DENIED as moot, plaintiff's motion for summary judgment is DENIED, and defendant's motion for summary judgment is

---

[8] Defendant raises various other arguments in its memorandum in support of summary judgment. For example, defendant contends that: (1) it was not a party to the Option One consent judgment; (2) plaintiff lacked standing to enforce compliance of the consent judgment; and (3) the record shows that plaintiff's alleged damages were not caused by the purported Chapter 93A violations. (Def.'s Mem. in Support. at 15-17). However, because the Court finds that defendant's conduct was not "unfair and deceptive," it need not consider those additional arguments.

14

GRANTED.

**So Ordered.**

Dated:  November 30, 2017

/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge